## Richmond

### RUFUS JOHN HAIRSTON V. COMMONWEALTH OF VIRGINIA.

November 24, 1976.

Record No. 760373.

Present, All the Justices.

*Howard J. Beck, Jr. (James W. Haskins; Young, Kiser, Haskins & Mann, Ltd.; Ford, Swezey & Beck,* on brief), for plaintiff in error.

*Wilburn C. Dibling, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

I'ANSON, C.J., delivered the opinion of the court.

Rufus John Hairston, defendant, was indicted for the murder of Clyde S. DeHart. Hairston pleaded not guilty, waived trial by jury, was found guilty of murder in the first degree, and was sentenced to life imprisonment in the State penitentiary.

Defendant's sole contention is that the Commonwealth's evidence was insufficient to sustain his conviction of murder in the first degree.

The Commonwealth's evidence is based principally on defendant's confession to the investigating officer. It shows that in the late afternoon on November 9, 1974, Hairston obtained a ride with DeHart in North Carolina. Hairston then forced DeHart at gunpoint to take him into Henry County, Virginia, where he shot him. DeHart's body fell out of the vehicle. Hairston went around to the other side of the vehicle, picked up the body, and put it in the back seat.

Hairston left the scene in DeHart's vehicle. He later drove another vehicle to a service station where he purchased approximately four gallons of gasoline and transferred it to the DeHart vehicle. Hairston then met Edward Rucker and persuaded Rucker to follow as the defendant drove DeHart's vehicle to an abandoned farm area. Rucker followed Hairston, as requested, and observed him douse the DeHart vehicle with gasoline and light it. Hairston then got into the vehicle driven by Rucker, and the two drove off. Hairston told Rucker that "... [I] had messed up and that [I] had gotten into some trouble." He also told Rucker that there was someone in the car, that he figured his fingerprints were all over the car, and that he felt burning the car was the best way to handle the situation.

The burned car with a totally burned body was found the next day. The body was identified as that of DeHart from certain personal property discovered at the scene.

The medical examiner discovered a .25 caliber automatic slug in the skull of the victim. In his opinion, the bullet entered through the right front side of DeHart's head and caused his death.

Later the police recovered portions of the dismantled .25 automatic weapon which defendant told the investigating officer he had used in shooting DeHart. The gun was equipped with a safety which required the hammer to be pulled back two clicks before it would fire.

In his confession to the investigating officer, defendant stated that when he forced the victim to drive him to Virginia, he had no intention of killing him, and that after the car was stopped to let him out at his destination "when he [Hairston] knew anything, he [Hairston] had shot the man." The officer

stated on cross-examination that from what the defendant told him it was his impression the accused did not intend to kill the victim.

Defendant did not take the stand, and he offered no evidence in his behalf.

As one facet of defendant's argument that the evidence was insufficient to support his conviction of first degree murder, he says that the trial court's "reliance on the presumption of premeditation from defendant's admitted use of a deadly weapon, as the only proof of the critical element of premeditation, becomes suspect" under *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975).

In his verbal summary of the applicable principles of law and the evidence, the trial judge stated when "the killing of one person by another with a deadly weapon that is in the previous possession of the slayer without any or slight provocation, there is a presumption that the killing is murder in the first degree."

■ Defendant argues that the trial court's reliance on the presumption to find him guilty of murder in the first degree placed upon him the burden of proving lack of premeditation and deliberation in violation of his rights to due process as explicated in *Mullaney*.

We do not agree with defendant's argument. What we said recently in *Hodge* v. *Commonwealth*, 217 Va. 338, 228 S.E.2d 692 (1976), fully disposes of this argument. Moreover, the statement of the trial judge, in his summary of the evidence, that this was "a senseless, needless, brutal, deliberate, willful, unreal, unbelievable, cold-blooded murder" clearly shows that he did not rely on the presumption in reaching his finding that the defendant was guilty of murder in the first degree.

■ Defendant next contends that there is no evidence of deliberation and premeditation which is essential to support a conviction of murder in the first degree. He argues that since it was the impression of the investigating officer that he [defendant] did not intend to kill DeHart, this was sufficient to negate the presumption that the killing was wilful, deliberate and premeditated. Hence he asserts that the Commonwealth failed in its burden of proving beyond a reasonable doubt those elements necessary to convict him of murder in the first degree.

A wilful, deliberate and premeditated killing is murder of the

first degree. Code § 18.1-21.[1] That does not mean, however, that in order for a killing to be murder of the first degree that any measurable period of time for pondering must elapse before the killing occurs. *Bailey* v. *Commonwealth*, 191 Va. 510, 516, 62 S.E.2d 28, 31 (1950). The intent to kill may come into existence for the first time at the time of the killing, or at any time prior thereto. It is the will and purpose to kill and not the interval of time which determines the grade of the offense. *Akers* v. *Commonwealth*, 216 Va. 40, 48, 216 S.E.2d 28, 33 (1975); *Bailey*, *supra*, 191 Va. at 516, 62 S.E.2d at 31 (1950).

Whether the defendant intended to kill DeHart was a question for the trial judge, as the trier of fact, to determine from all the facts and circumstances. Here the evidence shows that the defendant forced DeHart at gunpoint to drive him to Henry County. While defendant, in his confession, gave a detailed statement of the events, he stated no justification or excuse for shooting DeHart. Defendant merely said that before he knew anything, he had shot the man. When the statement is viewed in the light of all the other facts and circumstances, it does not mean that defendant lacked the intent to kill. Rather, it indicates that the killing happened quickly. For a killing to be wilful, deliberate and premeditated murder, it is not necessary that the intent to kill exist for any particular length of time prior to the killing. The intent to kill may come into existence for the first time at the time of the killing or any time prior thereto. Since DeHart fell out of the car when he was shot, it may be inferred that he had opened the door of his vehicle in an attempt to escape from the defendant when the fatal shot was fired. It may also be inferred that the reason defendant shot DeHart and burned his car and his body, was to cover up his involvement in forcing the victim at gunpoint to drive him to Henry County.

We hold that the trial judge's finding of fact that the killing was wilful, deliberate and premeditated is supported by the evidence. Thus, the judgment of conviction is

*Affirmed.*

---

1. For amendments to statute, *see* Acts 1976, c. 503 at 592.