**Robert Lewis WARLITNER, Petitioner,**

v.

**Glenn M. WEATHERHOLTZ, Sheriff, and Attorney General of Virginia, Respondents.**

Civ. A. No. 77–0049(H).

United States District Court, W. D. Virginia, Harrisonburg Division.

Dec. 19, 1977.

Franklin R. Blatt, Julias, Blatt & Blatt, Harrisonburg, Va., for petitioner.

James E. Kulp, Asst. Atty. Gen., Richmond, Va., for respondents.

## MEMORANDUM OPINION AND ORDER

TURK, Chief Judge.

The petitioner, Robert Lewis Warlitner, was convicted on October 6, 1975, by a jury, in the Circuit Court of Rockingham County, of murder in the second degree and was sentenced to eight years in the peniten-tiary. The evidence in his murder trial showed previous animosity between him and the man he was convicted of killing, including assaults upon the petitioner by the decedent. Petitioner testified that just prior to shooting the decedent, the decedent had made threatening gestures toward him with what he thought was a knife and that he shot him in self-defense. However, the testimony of other witnesses indicated that the decedent made no such threatening ges-tures. At his trial, maintaining that the trial court was shifting the burden of proof in contravention of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the petitioner unsuccessfully object-ed to four instructions:

Instruction 8

The Court instructs the jury that every unlawful homicide in Virginia may be inferred to be murder in the second de-gree. In order to elevate the offense to murder in the first degree, the burden of proof is on the Commonwealth; and in order to reduce the offense to manslaugh-ter, or to show a justification or excuse, the accused must produce evidence to raise a reasonable doubt as to the exist-ence of malice.

Instruction 12

The Court instructs the jury that murder in the first degree may be inferred from a mortal wound given with a deadly weapon in the previous possession of the slayer, without any, or upon very slight provocation.

Instruction 15

The Court instructs the jury that in the absence of proof to the contrary, malice may be implied from the deliberate use of a deadly weapon, when used in a manner calculated to take the life of another hu-man being.

Instruction 24

The Court instructs the jury that where a killing is proved by the use of a deadly weapon, and the accused relies upon the plea of self defense, the burden of pro-ducing evidence of such defense rests upon the accused; the burden resting upon an accused relying upon the right of

self defense is to establish such defense, not beyond reasonable doubt, nor even by the greater weight of the evidence, but only to the extent of raising in the minds of the jury a reasonable doubt as to whether or not he acted in the lawful exercise of such right. And, in determining whether or not such defense has been established, the jury should consider all of the evidence and circumstances in the case, that for the Commonwealth as well as that for the accused.

The Court further tells the jury that before the accused can rely upon self defense there must be some present peril or something in the attending circumstances indicative of a present purpose by Preston Wilford Meadows to make the apprehended attack. The act so done, or the circumstances thus existing, must have been of such a character as to afford the defendant, Robert Lewis Warlitner, reasonable grounds for believing there was a design on the part of Preston Wilford Meadows to do him some serious bodily harm, and that there existed imminent danger of carrying such design into immediate execution.

Upon being convicted, petitioner appealed his conviction to the Virginia Supreme Court reasserting his *Mullaney* arguments. The Virginia Supreme Court affirmed his conviction, and he filed this petition for a writ of habeas corpus pursuant to Title 28 U.S.C. § 2254.[1]

The Virginia Supreme Court found that the instructions numbered 8 and 15, pertaining to the existence of malice, did ". . . not impose upon the accused any burden of persuasion" but merely shifted to him the burden of producing some evidence that he acted in the heat of passion. *Warlitner v. Commonwealth,* 217 Va. 348, 350, 228 S.E.2d 698, 700 (1976). The court inter-

preted Virginia law, finding that in Virginia the presumption of murder in the second degree, which arises from an unlawful killing, is nothing more than an inference and establishes a burden of producing evidence and not one of persuasion. Similarly, the court found that the implication of malice from the deliberate use of a deadly weapon merely establishes an inference and creates no burden of persuasion. Moreover, the court found that when the specific instructions in question pertaining to malice are read in conjunction with the other instructions in the case "there can be no possible question that the burden of persuasion upon all the material elements, including malice, . . . was imposed upon the Commonwealth." *Warlitner v. Commonwealth, supra,* 217 Va. at 351, 228 S.E.2d at 700. Relative to instruction 12, which deals with murder in the first degree, the Virginia Supreme Court found that, as petitioner was acquitted of that charge, he had no basis to complain about the instruction. As to instruction 24, covering the defense of self-defense, the court denied the petitioner's petition for appeal and, therefore, did not address the issue in its opinion.

 This Court is in agreement with the Virginia Supreme Court that, as petitioner was convicted of murder in the second degree, he has no basis to complain about an instruction relating to murder in the first degree. Furthermore, this Court finds that if the complained of instruction was erroneous it was harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As to the import of Virginia law relative to the existence of malice this Court finds the Virginia Supreme Court's interpretation to be conclusive. *See, e. g., Mullaney v. Wilbur, supra,* 421 U.S. at 691,

---

1. Petitioner also alleged that unconstitutional burdens are inextricably bound up with the substantive law of homicide so as to render the substantive law unconstitutional. The Virginia Supreme Court rejected this contention out of hand. This Court, likewise, rejects this argument. Additionally, petitioner asserts that in refusing to grant a writ of error as to instruction 24 the Virginia Supreme Court denied him

the right to a fair appeal. In Virginia, "a decision to grant or refuse a petition for writ of error is based upon . . . the merits of the case." *Saunders v. Reynolds,* 214 Va. 697, 700, 204 S.E.2d 421, 424 (1974). Therefore, as to this instruction he has received a decision on the merits and this Court perceives no reason to examine this contention further.

95 S.Ct. 1881; *Murdock v. City of Memphis,* 20 Wall. 590, 22 L.Ed. 429 (1875). However, this Court is of the opinion that further inquiry is warranted relative to whether the instructions in this case communicated to the jury, in a constitutional way, the respective burdens of the petitioner and of the state pertaining to that element. As the Virginia Supreme Court failed to address specifically petitioner's contention that the burden of proving self-defense was shifted to him, this Court also feels compelled to address that issue.

In *Mullaney v. Wilbur, supra,* the accused was convicted under a Maine felonious homicide law which included "punishment categories" of murder and manslaughter. Pursuant to the Maine law, the accused was required to demonstrate by a preponderance of the evidence that he had acted in the heat of passion in order to reduce his punishment to that of the lesser manslaughter punishment. Being unable to meet his burden the accused was convicted of murder. The Supreme Court found that the shifting of this burden of persuasion was impermissible under the Due Process Clause of the United States Constitution and in violation of principles outlined in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which require the state to prove beyond a reasonable doubt every fact necessary to constitute a crime. Specifically, the court held "that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Id.* 421 U.S. at 704, 95 S.Ct. at 1892. However, the court was careful to point out that nothing in its opinion was intended to affect the rule found in many states which requires "the defendant to show that there is 'some evidence' indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving the absence of passion beyond a reasonable doubt." *Mullaney v. Wilbur, supra,* at 701–702, n. 28, 95 S.Ct. at 1891. Likewise, there is nowhere in the court's opinion an indication that the shifting of the burden of producing evidence, whether or not aided by a presumption or permissible inference, contravenes the Due Process Clause. To the contrary, the court's opinion indicates that they are permissible so long as they "satisfy certain due process requirements." *Mullaney v. Wilbur, supra,* at 702–703, n. 31, 95 S.Ct. 1881.

Subsequent to *Mullaney,* in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the court held constitutional the practice in New York of requiring a defendant charged with murder to prove by a preponderance of the evidence the affirmative defense of acting under the influence of extreme emotional distress. In *Patterson* the defendant was charged with second degree murder. Under New York law the elements of second degree murder are intention to cause the death of another person and the death of such other person. An accused may raise an affirmative defense that he acted under the influence of extreme emotional stress for which there was a reasonable explanation or excuse and reduce the crime to manslaughter. At trial, the accused contended that he acted under extreme emotional stress, and the trial court instructed the jury that the state had the burden of proving an intentional killing beyond a reasonable doubt but that the accused had the burden of establishing his defense of extreme emotional stress by a preponderance of the evidence. In finding the New York procedure constitutional, the Supreme Court explicitly reaffirmed and distinguished its previous cases including *Mullaney v. Wilbur, supra.* The court characterized its previous cases as "holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all the elements included in the definition of the offense of which the defendant is charged," stating that "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Patterson v. New York, supra,* 432 U.S. at 210, 97 S.Ct. at 2327. Specifically, the court stated that in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), it had found constitutional under the Due Process Clause the Oregon rule requiring

that the defense of insanity be proved by the defendant beyond a reasonable doubt and that in *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976) it had confirmed that it remained constitutional to place the burden of proving the affirmative defense of insanity. Furthermore, the court reiterated that it was "unwilling to reconsider *Leland and Rivera.*" *Patterson v. New York, supra,* at 2325. Continuing, the court explained that in *Mullaney* malice was an essential and indispensible requirement of the crime of murder and was inconsistent with the heat of passion on sudden provocation, which distinguishes murder from manslaughter, yet, was presumed from " 'any deliberate, cruel act committed by one person against another suddenly or without a considerable provocation' " and "could be rebutted by the defendant only by proving by a preponderance of the evidence that he acted with heat of passion upon sudden provocation." *Patterson v. New York, supra,* 432 U.S. at 213, 216, 97 S.Ct. at 2328, 2330. It was such a "shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed . . .," that the court found violative of due process in *Mullaney. Patterson v. New York, supra,* 432 U.S. at 215, 97 S.Ct. at 2330.

In *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), decided the same day as *Patterson v. New York, supra,* the court held *Mullaney v. Wilbur, supra,* retroactive and reversed the judgment of the North Carolina Supreme Court which found the principles enunciated in *Mullaney* to have been violated but which declined to give them retroactive application. At trial, an instruction was granted which, according to the North Carolina Supreme Court, required the defendant to prove his defense of self-defense by a preponderance of the evidence, which requirement, according to the North Carolina court, violated *Mullaney.* However, in reversing the North Carolina court, the Supreme Court found the question not presented, and explicitly did not decide whether ". . . it is constitutionally permissible for a State to permit self-defense as an affirmative defense that the prosecution need not negative by proof beyond a reasonable doubt." *Hankerson v. North Carolina, supra,* 432 U.S. at 240, 97 S.Ct. at 2344, n. 6.

In *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), the defendant was convicted of armed robbery. At his trial, he neither testified nor offered witnesses to testify in his behalf. The trial court charged the jury that the witnesses who did testify were presumed to speak the truth. The defendant maintained that the instruction relieved the state of proving guilt beyond a reasonable doubt. In rejecting defendant's contention, the Supreme Court stated that an instruction ". . . may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten, supra,* at 146, 94 S.Ct. at 400. The court then established the standard by which an instruction is to be judged:

> [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

*Id.* at 147, 94 S.Ct. at 400. It is, therefore, clear that in applying *Mullaney* and its progeny, a reviewing court must necessarily look beyond an isolated complained of instruction to determine its impact in the context of the overall charge. *Hallowell v. Keve,* 555 F.2d 103 (3rd Cir. 1977).

Although a particular instruction should never be judged in isolation, an examination of instructions necessarily begins with an examination of those to which error is assigned. In the present case, instruction 8 told the jury that every unlawful homicide may be inferred to be murder in the second degree and in order to reduce it to manslaughter "the accused must produce evidence to raise a reasonable doubt as to the existence of malice." Upon a reading of this instruction in isolation one might conclude that the defendant had the burden of raising a reasonable doubt as to the

existence of malice. This seemingly places a burden of persuasion upon defendant which cannot be constitutionally placed upon him. It is not up to the defendant to raise a reasonable doubt as to the existence of malice, but up to the Commonwealth to prove him guilty beyond a reasonable doubt. The nuance is not without significance as a jury could conclude that upon finding a defendant guilty of an unlawful homicide they are to find him guilty of murder unless he has met a burden of persuasion which has been allocated to him of raising a reasonable doubt as to the existence of malice. Such a reading would place a burden of persuasion upon the defendant as to a necessary element of the Commonwealth's charge. *Mullaney* made it clear that such burdens are impermissible as to the elements of the charge and there is nothing in *Patterson v. New York, supra,* which dispells it. Consequently, if this Court were to end its inquiry at this point it would have to conclude that *Mullaney* had been contravened. However, it is plain that the Court is to look to the overall charge.

Looking to the overall charge, the trial court instructed the jury that by the defendant's plea of not guilty he thereby placed in issue "each and every material allegation of the charges against him," placing "upon the Commonwealth the burden of proving his guilt beyond a reasonable doubt." The court also instructed that the petitioner was presumed innocent and if the jury had a reasonable doubt as "to any fact essential to prove the charge" then it was their duty to find him not guilty. Likewise, the court instructed that if, after a consideration of all the evidence, the jury were prevented "from reaching a convinced belief of the guilt of the accused," then the Commonwealth had failed to meet its burden. Furthermore, the court explained that the Commonwealth had to "prove from the evidence beyond a reasonable doubt every material fact" and if the jury were to find a reasonable doubt as to the grade of the offense then that doubt had to be resolved in favor of the defendant. Most importantly, the court defined malice and instructed the jury that it was "incumbent upon the Commonwealth to prove the defendant acted with malice," and unless the jury believed "from the evidence beyond a reasonable doubt that he did act with malice" then they could not find the defendant guilty of second degree murder. From these instructions, this Court has concluded that there can be no mistake but that the court placed the ultimate burden upon the Commonwealth of proving every element of the offense charged beyond a reasonable doubt and that this burden was effectively communicated to the jury.

■ As to the trial court's instruction relative to the implication of malice from the deliberate use of a deadly weapon, this Court discerns nothing in contravention of *Mullaney*. Moreover, as this Court is satisfied that the Commonwealth's burden to establish malice was properly communicated to the jury on the basis of the overall charge, any isolated error would be harmless.

■ Concerning petitioner's contentions pertaining to instruction 24 wherein the jury was told that the petitioner had the burden of producing evidence to establish his defense of self-defense by "raising in the minds of the jury a reasonable doubt as to whether or not he acted in the lawful exercise of such right," as with the other instructions complained of, the court's charge as a whole cured any defect.[2]

■ *In re Winship, supra,* and *Mullaney v. Wilbur, supra,* entered the maze of presumptions, burdens, and inferences cloaking

---

**2.** In *Frazier v. Weatherholtz,* 411 F.Supp. 349, 355 (W.D.Va. 1976), *appeal pending,* wherein the trial court failed "to accurately and specifically allocate the final burden of disproving self-defense to the prosecution" this Court found a similar instruction infirm. Unlike *Frazier,* the overall charge in this case made the Commonwealth's burden clear. Furthermore, the holding in this case in no way decides whether, in light of *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the defendant may be required to shoulder the burden of persuasion relative to the affirmative defense of self-defense.

88

the law of homicide for one reason—to reestablish a fundamental principle which in some instances had been lost to the semantics of the common law—the principle that an individual, charged with a criminal offense, is presumed innocent and only through evidence produced by the state proving the elements of the offense beyond a reasonable doubt can he be found guilty. Having found no inconsistency with those cases, upon an examination of the entire charge to the jury, this Court is compelled to dismiss the petitioner's petition for writ of habeas corpus.

PETITION DENIED.